UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAMES HARRIS,

    Plaintiff,

v.

EXTENDICARE HOMES, INC., d/b/a
PUGET SOUND HEALTHCARE CENTER,
*et al.*,

    Defendants.

Case No. C10-5752RBL

ORDER GRANTING IN PART
MOTION FOR PARTIAL
SUMMARY JUDGMENT

THIS MATTER comes before the Court on a motion for partial summary judgment filed by three of the defendants in this case: Extendicare Homes, Inc. d/b/a Puget Sound Healthcare Center ("PSHC"), Extendicare Health Facilities, Inc., and Extendicare Health Network, Inc. [Dkt. #30]. Plaintiff, who is suing individually and as the representative for the estate of Alma Harris, contends that PSHC provided inadequate care to the elderly Ms. Harris at its nursing home facility, and as a result, Ms. Harris suffered injuries and ultimately died. Plaintiff asserts various statutory and common law claims.

In response to the motion, plaintiff conceded that his claims should be dismissed against Extendicare Health Facilities, Inc., and Extendicare Health Network, Inc. Therefore, the motion is granted as to those two entities. Three issues remain regarding this motion: (1) whether plaintiff can pursue common law causes of action even though damages for injury as a result of

ORDER - 1

health care are governed exclusively by RCW 7.70.030, (2) whether plaintiff can pursue a claim for corporate negligence, and (3) whether plaintiff's claims under RCW 7.70.030 and Washington's Vulnerable Adult Statute ("VAS"), RCW 74.34 *et seq.* should be dismissed to the extent they are premised on actions that occurred prior to October 1, 2007, three years before the complaint was filed.

For the reasons set forth below, the Court grants the motion in part. Because this matter can be decided based on the parties' filings and the balance of the record, defendants' request for oral argument is denied.

## I. FACTS

The facts in this matter are not in dispute. The bulk of the facts set forth below are taken from plaintiff's amended complaint. [Amended Complaint, Dkt. #43].

In February 2007, at the age of 91, Ms. Harris was admitted to a PSHC facility in Olympia, Washington to recover from a broken hip. Approximately two months later, Ms. Harris fell out of her bed and was subsequently hospitalized for injuries that included a fractured pelvis. Following her discharge from the hospital, she returned to the PSHC facility. Ms. Harris developed pneumonia twice during the next two months.

In late October 2008, Ms. Harris's family removed her from the PSHC facility due to ongoing concerns about the quality of her care. [Amended Complaint at ¶ 3.5]. Specifically, they believed that Ms. Harris "had been neglected and received substandard care for her hygienic needs." [*Id.* at ¶ 3.5]. After Ms. Harris was hospitalized a third time for pneumonia, she returned to the PSHC facility in January 2009. Ms. Harris subsequently fell off of a toilet, suffered a concussion, and required hospitalization in July 2009. She was hospitalized again in September 2009. At that time, her records indicate that she was dehydrated. [*Id.* at ¶ 3.12]. Ms. Harris died in the hospital on September 13, 2009 from dehydration and "failure to thrive." [*Id.* at ¶ 3.13].

Plaintiff filed this action on October 1, 2010 in Thurston County Superior Court. Defendants subsequently removed the case. Plaintiff contends that Ms. Harris "suffered ongoing

ORDER - 2

abuse, neglect, and substandard care" from PSHC resulting in her repeated hospitalization, poor hygiene, low blood pressure, and dehydration, which ultimately contributed to her death. [Amended Complaint at ¶ 3.14]. Plaintiff also contends that PSHC failed to adequately train and supervise its staff. Plaintiff asserts claims for wrongful death, violation of the VAS and regulations, and common law claims for negligence, gross negligence, negligent personal supervision and care, and negligent hiring, training, and retention of employees. Defendants' motion does not address the claim under the VAS, except to argue that any claim based on actions that occurred prior to October 1, 2007 is time barred.

## II. DISCUSSION

### A. Applicable Legal Standards

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, the records show that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

All reasonable inferences supported by the evidence are to be drawn in favor of the nonmoving party. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving party, summary judgment must be denied." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995). "[S]ummary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." Id. at 1221.

**B.      Defendants' Request to Strike the Response and the Expert Reports**

As an initial matter, defendants note that plaintiff's response to the motion was undisputedly filed two days late. As a result, defendants urge the Court to strike the late response and grant defendants' motion as effectively unopposed. Plaintiff's late filing is unexplained and in violation of the Local Rules. However, because defendants did not suffer prejudice as a result and the Court prefers to resolve issues on the merits, it will consider the belatedly-filed response. Plaintiff is warned, however, that any subsequent late-filed memoranda could be stricken and/or result in the imposition of sanctions.

Defendants also move to strike as hearsay the two expert reports plaintiff filed with his response. Plaintiff's counsel attached both reports to his own declaration, but he is not competent to testify about the matters therein. Fed. R. Civ. P. 56(c)(4). Furthermore, the reports are unsworn, and courts in this circuit have routinely held that unsworn expert reports are inadmissible. *See, e.g.*, *Aecon Bldgs., Inc. v. Zurich N. Am.*, 572 F. Supp. 2d 1227, 1237 (W.D. Wash. 2008); *Shuffle Master, Inc. v. MP Games LLC*, 553 F. Supp. 2d 1202, 1210-11 (D. Nev. 2008) (citing various authorities and explaining that unsworn expert reports are not admissible to support or oppose summary judgment); *King Tuna, Inc. v. Anova Food, Inc.*, 2009 U.S. Dist. LEXIS 22901 at *3 (C.D. Cal. 2009). The reports are also inadmissible because they fail to attach copies of the documents to which they refer. Fed. R. Civ. P. 56(c); *see also Freeman v. Kern County, Kern Med. Ctr.*, 2008 U.S. Dist. LEXIS 76342 (E.D. Cal. 2008) ("'This means that if written documents are relied upon they must actually be exhibited; affidavits that purport to describe a document's substance or an interpretation of its contents are insufficient.'") (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2722 (3d ed. 1998)). Ms. Thomason's report quotes from various documents, including Ms. Harris's medical records, without attaching them. Similarly, Mr. Engstrom does not attach the various organizational charts and other documents to which he refers. The Court will not simply assume that the experts have accurately quoted or characterized those documents. Accordingly, the Court grants defendants' request to strike the expert reports of Ms. Thomason and Mr.

1 Engstrom.

**C.     Other Statutory and Regulatory Violations**

Defendants contend that the Court should dismiss plaintiff's claims based on "Other Statutory and Regulatory Violations" because the listed regulations and statutes do not provide for private rights of action.[1]  In response, plaintiff concedes that those statutes and regulations do not provide private rights of action, and explains that he is not asserting claims under those authorities.  [Response to Motion to Dismiss at p. 14].  Instead, he has alleged the violations to support his claim under the Vulnerable Adult Statute.  Therefore, because defendants have not moved for summary judgment on the VAS claim, the Court will not consider at this time whether those alleged violations support the VAS claim.

**D.     Common Law Negligence**

Defendants urge the Court to dismiss plaintiff's claims for common law negligence, gross negligence, and negligent hiring, training, retention, and supervision.  They note that under Washington law, "'whenever an injury occurs as a result of health care, the action for damages for that injury is governed exclusively by RCW 7.70.'"  Defendants' Motion at p. 11 (quoting *Branom v. State*, 94 Wn. App. 964, 969, 974 P.2d 335 (1999)).  The statute "sweeps broadly" and applies to all civil actions for damages from health care, regardless of how the claim is styled.  *Branom*, 94 Wn. App. at 969.

In light of the *Branom* decision and subsequent authority, the key is determining whether Ms. Harris's injuries occurred as a result of "health care."  *Branom*, 94 Wn. App. at 969.  The statute does not include a definition.  In *Branom*, the court explained, "[W]e have previously construed [the term health care] to mean 'the process by which [a physician is] utilizing the skills which he has been taught in examining, diagnosing, treating, or caring for the patient as his patient.'"  *Id*. at 969-70 (quoting *Estate of Sly v. Linville*, 75 Wn. App. 431, 439, 878 P.2d 1241

---

[1] The Amended Complaint appears to assert claims under 42 C.F.R. § 483, RCW 74.42 *et seq.*, WAC 388-97 *et seq.*, and RCW 70.129.

ORDER - 5

(1994)). In contrast, Washington law permits plaintiffs to bring a claim for common law negligence for injuries sustained in a nursing home that were not the result of the administration of health care. *Conrad v. Alderwood Manor*, 119 Wn. App. 275, 78 P.3d 177 (2003) (allowing plaintiff to pursue claims for neglect and common law negligence; defendant did not argue that the decedent was injured as the result of health care).

In this case, plaintiff concedes that a physician approved a care plan for Ms. Harris and does not dispute that the development of the plan constituted health care. [Amended Complaint at ¶ 3.16]. Therefore, to the extent that plaintiff claims that Ms. Harris's injuries were caused by deficiencies in the plan itself, that claim must be brought under the statute.

In addition, plaintiff contends that Ms. Harris was injured because PSHC staff implemented restrictions, including limiting her to only "thickened water" and ignoring her pleas for regular water, that caused her dehydration. The record is devoid of evidence about how or why that restriction was implemented. Similarly, the record contains no evidence regarding by whom and how decisions were made about Ms. Harris's nutrition, hygiene, and mobility assistance, all of which plaintiff contends were deficient and contributed to Ms. Harris's injuries. Although the care plan is referenced, it is not in the record. Defendants invite the Court to assume that medical professionals were involved and exercised their skills regarding all aspects of Ms. Harris's care, but the Court cannot make that assumption. Based on the dearth of evidence, the Court cannot conclude that the implementation of the plan equated to the provision of health care.

Moreover, the fact that a physician developed Ms. Harris's care plan does not preclude claims for negligent hiring, retention, training, and supervision. As *Branom* and its progeny make clear, the inquiry must focus on whether the claim is based on the provision of "health care" regardless of how the claim is styled. Furthermore, defendants cite no authority holding that those claims are barred by the medical negligence statute. In fact, the case defendants cite actually undermines their position. In *Estate of French v. Stratford House*, the court drew a distinction between health care, which included assessing the patient's condition and developing

a treatment plan, with "custodial services," such as bathing, feeding, and grooming, functions that plaintiffs could have performed themselves. 333 S.W.3d 546, 557-58 (Tenn. 2011) (citing *Smartt v. NHC Healthcare/McMinnville, LLC*, 2009 Tenn. App. LEXIS 143 (2009)). The court noted that although patient assessment and development of a treatment plan is covered by the medical malpractice statute, allegations that certified nursing assistants "failed to comply with the care plan's instructions due to a lack of training, understaffing, or other causes, constitute claims of ordinary, common law negligence." *Id.* at 559. The Court agrees that decisions regarding training, hiring, and staffing are typically business/operational decisions, not health care decisions as defendants invite the Court to assume.

Defendants also contend that plaintiff has failed to offer any evidence of negligent hiring, retention, training, or supervision. Because defendants raised that argument for the first time in their reply, the Court does not consider it. Accordingly, the Court will not dismiss plaintiff's claims for common law negligence or for negligent hiring, retention, training, or supervision. This ruling is made without prejudice to defendants' ability to move again for summary judgment after the record is more developed.

### E. Corporate Negligence

In his response to the motion, plaintiff argues that the Court should not dismiss his claim for "corporate negligence." Plaintiff argues that defendants "have created a pattern of corporate negligence by syphoning money from [PSHC] to their parent companies, therefore posting business losses and leaving inadequate funding for staffing, training, and supervision." [Plaintiff's Response at p. 6]. That claim, however, has not been pled.

More fundamentally, it appears that the "corporate negligence" claim is inapplicable in this context. Washington has recognized the theory based on a nondelegable duty a hospital owes directly to the patient. *Douglas v. Freeman*, 117 Wn.2d 242, 248, 814 P.2d 1160 (1991). The doctrine requires hospitals to exercise reasonable care to ensure that only competent physicians are selected as members of the hospital staff. *Id.* However, the Washington court that first recognized the doctrine did so only in the context of hospitals, and subsequent

Washington courts have done the same. *Id.; see also Pedroza v. Bryant*, 101 Wn.2d 226, 236, 677 P.2d 166 (1984) (explaining that the doctrine of corporate negligence is "based on the proposition that a hospital owes an independent duty of care to its patients"). Plaintiff has not cited any cases applying the corporate negligence theory to a nursing home. Furthermore, the doctrine developed as a means for holding a hospital liable for its own negligence when the physicians who allegedly caused the injuries were independent contractors rather than employees, rendering the theory of respondeat superior inapplicable. *Id.* at 228-30; Susan Ward, Comment, *Corporate Negligence Actions Against Hospitals -- Can the Plaintiff Prove a Case?*, 59 Wash. L. Rev. 913 (1984). In this case, that policy rationale appears inapplicable based on the current record. Furthermore, the theory is unnecessary because, as set forth above, the Court is permitting plaintiff to pursue theories of negligent hiring, retention, training, and supervision against PSHC for its own alleged negligence. To the extent that plaintiff contends that defendants' financial improprieties contributed to Ms. Harris's injuries, he can argue that in connection with those theories if warranted. Therefore, plaintiff's claim for "corporate negligence" fails even if it had been pled.

## F. Statute of Limitations

Defendants argue that plaintiff's claims under the medical negligence statute and the VAS must be dismissed to the extent the claims are based on conduct that occurred prior to October 1, 2007. The statute of limitations for an injury arising from health care is three years. RCW 4.16.350. Where, as in this case, the plaintiff alleges negligence during a continuing course of treatment, the three-year statute of limitations begins to run when the plaintiff discovers that the treatment has been negligent. *Caughell v. Group Health Coop.*, 124 Wn.2d 217, 236, 876 P.2d 898 (1994) ("The discovery of negligence during the course of treatment marks the last negligent act under RCW 4.16.350, triggering the 3-year statutory period."). "The patient's discovery of facts sufficient to establish continuing negligent treatment obligates the patient to take action from that moment on." *Id.* In *Caughell*, the Washington Supreme Court explained the application of the rule: "For any known acts of negligence following discovery, a separate

ORDER - 8

statutory period applies to each negligent act. Thus, the statute would expire on all negligent acts occurring more than 3 years prior to [plaintiff's] complaint." *Id.* at 239.[2]

In this case, Ms. Harris's family knew in April 2007 that she had fallen from her bed and suffered a broken pelvis while in the care of PSHC. During his deposition, plaintiff testified that he believed, at the time of the fall, that it occurred as a result of PSHC's negligence. James Harris Dep. at p 30 (explaining that Ms. Harris fell because PSHC failed to give her more attention and failed to use precautions including bed rails; the family considered moving her to another facility at that time); *id.* at 63-64 (explaining that he has believed, since April 2007, that PSHC's wrongful conduct led to Ms. Harris breaking her pelvis, which caused the need for her continued care and the wrongful depletion of her savings). Ms. Harris's daughter also believed that PSHC's neglect led to the fall. Jackie Harris Dep. at pp. 44-45. During her deposition, Ms. Harris's daughter opined that PSHC staff neglected her mother's hygiene, including failing to bathe her often enough and to change her soiled undergarments. *Id.* at pp. 63, 69-70. That undisputed evidence shows that plaintiff knew enough in April 2007 to trigger the statute of limitations for the negligence and VAS claims.

Plaintiff nevertheless argues that the statute of limitations does not bar his claim for two reasons. First, he argues that the statute of limitations on the claims related to Ms. Harris's death did not begin to run until she died because her death established an essential element of the claim.[3] But defendants do not argue that the claims related to her death are time barred. *See,*

---

[2] In an analogous context, a plaintiff in an employment discrimination suit may allege the "continuing violation" exception to the three-year statute of limitations for on-going discriminatory treatment. *See, e.g.*, *Washington v. Boeing*, 105 Wn. App. 1, 6-9, 19 P.3d 1041 (2000). "But there, too, at least one final discriminatory act must occur within three years before he or she files suit. The discrimination plaintiff must also show he or she was not aware that the other acts, which would otherwise now be untimely, were discriminatory when they occurred." *Callfas v. Dep't of Constr. & Land Use*, 129 Wn. App. 579, 595-96, 120 P.3d 110 (2005) (citing *Washington*, 105 Wn. App. at 6-9).

[3] Plaintiff argument appears to misunderstand the operation of the statute of limitations for malpractice. It does not run from the accrual of an action but rather from the commission of

ORDER - 9

1  *e.g.*, *Caughell*, 124 Wn.2d at 239 ("For any known acts of negligence following discovery, a
2  separate statutory period applies to each negligent act."). However, the fact that those claims
3  may be timely does not affect the statute of limitations for the other claims.

4  Second, plaintiff argues that because the VAS claim is based on a *pattern* of neglect,
wrongful conduct that occurred outside of the limitations period is relevant and admissible as
part of that claim. Defendants concede that plaintiff may not be barred from introducing
evidence related to Ms. Harris's care prior to October 1, 2007. Because admissibility is not at
issue in this motion, the Court declines to give an advisory ruling regarding admissibility.
However, even though plaintiff may be entitled to rely on the evidence to establish a pattern
does not mean that he can recover damages for the time-barred conduct, and *Caughell* dictates
otherwise. Therefore, the Court grants defendants' motion for summary judgment on plaintiff's
claims for medical negligence and under the VAS to the extent they are based on conduct that
occurred prior to October 1, 2007.

## III. CONCLUSION

For all of the foregoing reasons, the Court GRANTS IN PART defendants' motion for
partial summary judgment (Dkt. #30). The motion is granted as to Extendicare Health Facilities,
Inc., and Extendicare Health Network, Inc. and plaintiff's claims against those entities are
dismissed with prejudice. The Court also dismisses with prejudice plaintiff's claims for (1)
common law negligence to the extent that plaintiff claims that Ms. Harris's injuries were caused
by deficiencies in her care plan, (2) corporate negligence, and (3) negligence, medical
negligence, and claims under the VAS to the extent they are premised on PSHC's conduct

---

the negligent act or the discovery of the same. *Gunnier v. Yakima Heart Ctr.*, 134 Wn.2d 854,
861, 953 P.2d 1162 (1998); *see also Caughell*, 124 Wn.2d at 239.

that occurred before October 1, 2007.  Otherwise, defendants' motion is denied.

**IT IS SO ORDERED.**

Dated this 4th day of November, 2011.

/s/ Ronald B. Leighton
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE

ORDER - 11